FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAR 25 2013 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

PRASANNA GOONEWARDENA,

                Plaintiff,

v.

NORTH SHORE LONG ISLAND JEWISH
HEALTH SYSTEM, THE ZUCKER HILLSIDE
HOSPITAL, LUDMILA DASHEVSKY, TINA
WALCH, PAULINE WALFISCH, MAHENDRA
AIREN, REMY GALLANT, CHRISTOPHER
PHILLIPS, IN SOON YANG, JOHN
KANE, MARY AFFLERBACH, EDWARD
REDMOND, JOHN DOE and GERALD RYAN,

                Defendants.

------------------------------------------------------------x

**MEMORANDUM & ORDER**
11-CV-2456 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Prasanna Goonewardena, proceeding *pro se*, filed the above-captioned action on May 20, 2011. On January 10, 2012, Plaintiff filed an Amended Complaint against Defendants North Shore Long Island Jewish Health System ("NSLIJ"), the Zucker Hillside Hospital ("Zucker Hillside"), Ludmila Dashevsky, Tina Walch, Pauline Walfisch, Mahendra Airen, Remy Gallant, Christopher Phillips, In Soon Yang, John Kane, Mary Afflerbach, Edward Redmond, John Doe and Gerald Ryan, alleging, among other things, that Defendants deprived Plaintiff access to services and treatment programs on the basis of his disability and conspired to hospitalize him involuntarily in retaliation for his complaints about discrimination. The Amended Complaint alleges claims pursuant to Title I and Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act (the "Rehabilitation Act"), 42

U.S.C §§ 1983,[1] 1985 and 1986, and various state law claims.[2] On May 11, 2012, Defendants moved to dismiss the Amended Complaint. Judge Nicholas G. Garaufis[3] referred the motion to Magistrate Judge Lois Bloom for a report and recommendation. On November 5, 2012, Magistrate Judge Bloom filed a report and recommendation (the "Report & Recommendation"), recommending that Defendants' motion to dismiss be granted in its entirety and Plaintiff be denied further leave to amend. Plaintiff timely filed objections and requested permission to amend the Amended Complaint. For the reasons set forth below, the Report & Recommendation is adopted in its entirety, and Plaintiff's motion to amend the Amended Complaint is denied.

I. **Background**

The facts alleged in the Amended Complaint are assumed to be true for the purposes of this motion. Plaintiff is a South Asian man of Sri Lankan origin. (Am. Compl. ¶ 8.) Plaintiff suffers from Obsessive Compulsive Disorder ("OCD").[4] *Id.* at ¶ 13. From 1998 until March 30, 2011, Plaintiff was a patient at Zucker Hillside. *Id.* at ¶ 14. Plaintiff's doctor at Zucker Hillside was Defendant Ludmila Dashevsky. *Id.* at ¶ 15. Plaintiff alleges that, as early as 2008, he complained to Dashevsky that he believed that she and Defendant Tina Walch, the director of the

---

[1] Plaintiff alleged retaliation in violation of his First Amendment rights, which the Court construes as a claim brought pursuant to 42 U.S.C. § 1983.

[2] Plaintiff also brought a claim under Title VII of the Civil Rights Act ("Title VII") but withdrew the claim in his objections to the Report & Recommendation. (Pl. Obj. 2.)

[3] The case was reassigned to the undersigned on March 23, 2012.

[4] Plaintiff alleges in the Amended Complaint that he also suffers from Schizaoaffective disorder, (Am. Compl. ¶ 13), but states in his objections that he suffers from OCD and depression but not from Schizoaffective disorder or any other illness, (Pl. Obj. 6).

aftercare unit, were discriminating against him.[5] *Id.* at ¶ 15. In 2008, Plaintiff complained to Dashevsky that the hospital had "discriminatory practices" and that he was not receiving "adequate care." *Id.* at ¶ 16. Dashevsky threatened to admit Plaintiff as an inpatient and "close his file," if he complained to the administration. *Id.* After that session, Plaintiff feared that he would "be imprisoned for exercising his 1st Amendment rights." *Id.* at ¶ 17. Plaintiff did not believe that he was being properly treated for his illness, and he alleges that the medication he was prescribed made his OCD worse. *Id.* Plaintiff alleges that Zucker Hillside had 20 attending doctors, all of whom were white, and its doctors only spent 15 minutes with each patient. *Id.* Plaintiff's sister went to Zucker Hillside and spoke with Defendant John Kane. *Id.* She told Kane that she believed that the hospital was running a scam and that Plaintiff was being discriminated against because of his race, color and national origin. *Id.* Kane said that he would speak with Walch, the director of the aftercare unit, regarding Plaintiff's treatment concerns. *Id.* at ¶ 18. Walch called Plaintiff's sister and told her that Plaintiff should go elsewhere, if he was not happy with the service he was receiving. *Id.*

Plaintiff did not have any money, so he decided to continue to be treated at Zucker Hillside. *Id.* at ¶ 19. In 2010, Plaintiff received multiple bills from the hospital charging his insurance company $486 for a 15 minute visit. *Id.* Plaintiff asked Dashevsky why his insurance company was being charged so much for a 15 minute visit, and she told Plaintiff that she would hospitalize Plaintiff and heavily medicate him, if he continued to complain. *Id.* Plaintiff "started to investigate [the] hospital's discriminatory practices, billing practices and why 99% of [the]

---

[5] As noted in the Report & Recommendation, the term "aftercare unit" appears to refer to the "Hillside Hospital Adult Ambulatory Care Unit for Outpatient Treatment." (Report & Recommendation 8 n.4.)

3

permanent doctors are white." *Id.* at ¶ 20. Plaintiff also asked to switch doctors, but his request was denied. *Id.*

On June 10, 2010, Plaintiff met with Walch and "explained the situation to her that the Plaintiff was discriminated against because of his race, and was on the wrong medications, and requested an apology for her false accusations she made in 2000." *Id.* at ¶ 21. Walch told Plaintiff that he needed to stop complaining or he would be hospitalized. *Id.* Plaintiff alleges that at his next appointment with Dashevsky, she was angry at Plaintiff for meeting with Walch and said that he was a trouble maker. *Id.* at ¶ 22. A few weeks later, Plaintiff met with Mary Ann Ricardo, an employee at Zucker Hillside, and asked why the attending doctors only see patients for 15 minutes. *Id.* at ¶ 23. Ricardo told Plaintiff that the appointments are short because attending doctors only prescribe medication — they do not provide therapy. *Id.* Ricardo told Plaintiff to see a social worker, if he needed therapy. *Id.* Plaintiff began looking for a social worker. *Id.* at ¶ 24.

Plaintiff always arrived one hour early for his appointments and, while he was waiting, would speak with various Zucker Hillside employees. *Id.* at ¶ 25. In early 2011, Plaintiff had a conversation with one of the hospital's employees and "became aware that aftercare nurses see Patients without supervision of a doctor." *Id.* at ¶ 26. Plaintiff began questioning Ricardo about this practice, and Dashevsky overheard the conversation and demanded that Plaintiff stop questioning nurses about the aftercare unit. *Id.* In January of 2011, Dashevsky demanded that Plaintiff stop having any conversations with staff members or else he would be hospitalized. *Id.* at ¶ 27. On March 11, 2011, Plaintiff was at the hospital scheduling an appointment to see Dashevsky. *Id.* at ¶ 28. On his way out of the hospital, Plaintiff was reading a list of active residents posted on the wall. *Id.* While he was reading the list, a Caucasian woman approached

Plaintiff, told him that she knew who he was and to leave the area immediately. *Id.* Plaintiff returned to the second floor, where he had been to make his appointment, and encountered Ricardo. *Id.* at ¶ 29. Plaintiff asked Ricardo for the name of the woman who had harassed him, and Ricardo said that it was Defendant Pauline Walfisch, the aftercare program director. *Id.* Plaintiff told Ricardo "to tell Ms. Walfisch that if she ever threatened the Plaintiff again, Plaintiff will press charges against her for harassment." *Id.*

On March 16, 2011, Plaintiff wrote a letter to Dashevsky, informing her that he was "going to take legal actions against the hospital if the hospital [did] not change their policies." *Id.* Plaintiff alleges that this "letter did not sit well with Dr. Dashevsky, Dr. Walch and Ms. Walfisch." *Id.* at ¶ 30. On March 30, 2011, Plaintiff had an appointment with Dashevsky. *Id.* Plaintiff arrived early for his appointment, so he could meet with Kane. *Id.* In light of the number of times Dashevsky threatened Plaintiff with hospitalization, Plaintiff carried a digital recorder with him that day. *Id.* When Plaintiff arrived at Kane's office, his secretary recognized Plaintiff and told Plaintiff that Kane was not available. *Id.* Plaintiff left his contact information and asked the secretary to tell Kane that Plaintiff was going to take legal action against the hospital. *Id.* Plaintiff returned to the aftercare building but did not go to the second floor for his appointment with Dashevsky. *Id.* at ¶¶ 30–31. Instead, Plaintiff waited in the first floor reception area. *Id.* at ¶ 31. While he was waiting, Plaintiff overheard the receptionist say his last name to someone on the phone. *Id.* Plaintiff asked who she was speaking to, and she responded that she was speaking with his doctor. *Id.*

Michael Levene arrived and asked the receptionist if "that guy" was still in the reception area. *Id.* The receptionist pointed at Plaintiff, and Plaintiff asked Levene why he was asking about Plaintiff. *Id.* Levene responded that someone had complained to security about Plaintiff.

*Id.* Plaintiff went up to the second floor, and Dashevsky told Plaintiff that she would see him at 5:00 p.m. *Id.* at ¶ 32. A few minutes before five, Plaintiff went outside to activate his audio recorder. *Id.* at ¶ 33. Dashevsky then came and took Plaintiff to her office. *Id.* at ¶ 33. When Plaintiff asked why she had called the receptionist, Dashevsky told him that someone had complained about his visit to Kane. *Id.* A few minutes into the conversation, Defendant Gerald Ryan, the hospital's security director, arrived. *Id.* at ¶ 34. He asked Plaintiff to sign a document without reading it and without allowing Plaintiff to consult a lawyer. *Id.* at ¶¶ 34–35. The letter, which is attached to the Amended Complaint, states:

> On at least two occasions over the past month, you were observed on the Zucker Hillside Hospital (ZHH) campus without an appointment attempting to engage in contact with staff who are not involved in your care. On at least one occasion you were asked to leave the premises. This pattern of repeated behavior is inappropriate and not related to your care plan here at ZHH. While the ZHH is dedicated to outstanding patient care, anyone in need of treatment without an appointment must report to the Hillside Evaluation Clinic ("HEC") or the Emergency Department. Please be advised of the following:
> - You are not authorized to enter the ZHH campus without a scheduled appointment unless you report to the HEC or the LIJ Emergency Department.
> - Upon finishing your appointment, you should depart the premises in a timely manner.
> - Any questions or treatment issues should be discussed with your treating doctor.
> - Failure to abide by this policy will result in your expulsion from the grounds by Security.

(Am. Compl. Ex. I.) Plaintiff refused to sign the letter, and Dashevsky told him, "in the mean time you have to be in the hospital." (Am. Compl. ¶ 35.) Plaintiff still refused to sign the letter, and Dashevsky told the officer to take Plaintiff to the walk-in clinic. *Id.*

Plaintiff went to the walk-in clinic, and, when he arrived, he asked Defendant Remy Gallant, one of the hospital's mental health workers, if he could see the director. *Id.* at ¶ 37. Gallant asked Plaintiff to take his jacket off. *Id.* Plaintiff refused "since he had an activated

6

recorder in his jacket pocket." *Id.* Plaintiff asked to use the bathroom, and Defendant Christopher Phillips approached and said, "Sir you are going to force our hands in a second." *Id.* Plaintiff responded, "You do what you got to do." *Id.* A security guard that had been standing behind Plaintiff approached Plaintiff and picked him up. *Id.* Phillips, Gallant, Wane Thompson and two other security guards took Plaintiff to another room and "forced the Plaintiff fac[e] down on a mattress that was on the floor." *Id.* One of the security guards put his knees on Plaintiff's back, and Phillips started to punch Plaintiff. *Id.* at ¶ 38. Plaintiff screamed for help, and Phillips smothered Plaintiff to keep him quiet. *Id.* at ¶ 39. Plaintiff eventually stopped struggling, and his clothes and shoes were removed. *Id.* at ¶ 40. Plaintiff was injected with antipsychotic drugs. *Id.* at ¶ 38. Plaintiff alleges that this assault was ordered by Dashevsky. *Id.* at ¶ 42.

A few hours later, Defendant Edward Redmond arrived and took Plaintiff to the inpatient unit. *Id.* at ¶ 41. Plaintiff asked for his clothes back, but Redmond told Plaintiff that he would not get his clothes back until he got to the inpatient unit. *Id.* On March 31, 2011, Plaintiff wrote to the chief administrator of Zucker Hillside and requested an investigation into the assault. *Id.* at ¶ 45. The next day, Defendant Mary Afflerbach conducted a short interview with Plaintiff and then wrote a "sham" incident report. *Id.* at ¶ 46. The unit chief examined Plaintiff and determined that he could be discharged. *Id.* at ¶ 44. Before he was discharged, Nancy Conti informed Plaintiff that Dashevsky, Walch and Walfisch had "decided not to take the Plaintiff back to the after care unit to treat the Plaintiff because of his disability." *Id.* Plaintiff immediately wrote a letter to Conti, "stating that this action was a violation of Title III of the ADA. *Id.* Plaintiff was discharged on April 6, 2011. *Id.* at ¶ 47.

## II. Discussion

### a. Standard of Review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *Id.*; *see also Larocco v. Jackson*, No. 10 Civ. 1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. 28 U.S.C. § 636(b)(1)(C); *see also Larocco*, 2010 WL 5068006, at *2.

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). Where a plaintiff is proceeding *pro se*, the court must read his or her pleadings "liberally and interpret them to raise the strongest arguments they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citations omitted). A complaint must, however, "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678). "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

### b. Objections to the Report & Recommendation

Plaintiff objects to Magistrate Judge Bloom's recommendation that the following claims be dismissed: (1) denial of access to treatment and facilities in violation of Title III[6] of the ADA

---

[6] In the Amended Complaint, Plaintiff purports to bring a claim under Title I of the ADA. (Am. Compl. ¶ 56.) Magistrate Judge Bloom dismissed any such claim because "[t]his Title, which prohibits discrimination in employment or hiring, is inapplicable to the instant facts as plaintiff was not a job applicant or employee of defendants." (Report & Recommendation 8 n.6.) This Court agrees and dismisses any claim in the Amended Complaint brought under Title I of the ADA.

9

and Rehabilitation Act, and (2) retaliation in violation of the First Amendment.[7] (Pl. Obj. Mem. 2.) Plaintiff also objects to Magistrate Judge Bloom's recommendation that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, if his federal law claims are dismissed. (Pl. Obj. Reply 13–14.) For the reasons set forth below, Magistrate Judge Bloom's Report & Recommendation is adopted in its entirety. The Amended Complaint is dismissed, and Plaintiff's motion for leave to amend the Amended Complaint is denied as futile, since Plaintiff's claims would nevertheless be subject to dismissal.

### i. ADA and Rehabilitation Act Claims

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) that he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.[8] *Krist. v. Kolombos Rest. Inc.*, 688 F.3d 89,

---

[7] Plaintiff indicates that he still intends to pursue his civil conspiracy claims pursuant to §§ 1985 and 1986 but makes no specific objection to Magistrate Judge Bloom's recommendation that these claims be dismissed. (Pl. Obj. Mem. 2.) This statement, without more, is insufficient to warrant *de novo* review. *See Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (finding that a "bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority" does not constitute an objection). Having reviewed the recommendations, the Court, finding no clear error, adopts Magistrate Judge Bloom's recommendation and dismisses Plaintiff's §§ 1985 and 1986 claims.

[8] A plaintiff is not required to specifically plead every element of a prima facie case to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("We have stated that the *Swierkiewicz* holding applies with equal force to any claim that the *McDonnell Douglas* framework covers." (citations, internal quotations and alterations omitted)). A plaintiff must only plead facts sufficient to render his or her discrimination claim facially plausible under *Twombly* and *Iqbal*. *Boykin*, 521 F.3d at 215–16 (finding the plaintiff had pleaded facts sufficient to state a claim where she "provided the date and circumstances of the plaintiff's termination and alleged that employees of other nationalities were treated differently than plaintiff"). The elements of a prima facie case "provide an outline" of what is necessary to make

94–95 (2d Cir. 2012). "These requirements apply with equal force to discrimination claims brought under the Rehabilitation Act." *Hargrave v. Vermont*, 340 F.3d 27, 35 (2d Cir. 2003); *see also Bryant v. N.Y.S. Educ. Dep't*, 692 F.3d 202, 216 (2d Cir. 2012) ("To establish a prima facie case under the Rehabilitation Act, a plaintiff must allege: [1] that he or she is a person with disabilities under the Rehabilitation Act, [2] who has been denied benefits of or excluded from participating in a federally funded program or special service, [3] solely because of his or her disability."). The Rehabilitation Act also requires that a plaintiff show that the denied benefit is part of a "program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

### 1. Denial of Access to Treatment and Services

In the Amended Complaint, Plaintiff alleges that (1) beginning in 1998 until March 30, 2011, Plaintiff was excluded "from the participation in, denied the benefits of, and was discriminated against while [he] was in treatment," (Am. Compl. ¶ 62); and (2) Plaintiff was denied access to treatment at the aftercare unit after he was released from the impatient unit, (Am. Compl. ¶¶ 58, 62). Magistrate Judge Bloom found that Plaintiff had failed to state a plausible discrimination claim because he did not allege "that he was denied a medication regime or other services in the after care unit that are provided to nonhandicapped individuals" or any other allegations of disparate treatment.[9] (Report & Recommendation 9.)

---

a discrimination claim plausible. *Pahuja v. Am. Univ. of Antigua*, No. 11 Civ. 4607, 2012 WL 6592116, at *9 (S.D.N.Y. Dec. 18, 2012) (citations, alterations, and internal quotation marks omitted). Courts, therefore, consider these elements in determining whether the plaintiff has alleged facts sufficient to state a claim. *Id.*

[9] Defendants argue in their motion to dismiss that Plaintiff fails to allege facts sufficient to establish that he has a disability. For the purposes of the Report & Recommendation, Magistrate Judge Bloom assumed, without deciding, that Plaintiff's OCD and Schizoaffective disorder would qualify as disabilities. This Court does the same.

11

The purpose of Title III of the ADA and the Rehabilitation Act is "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998); *see also Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008) ("Title III of the ADA prohibits discrimination against individuals 'on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'" (quoting 42 U.S.C. § 12182(a))); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (noting that there are "subtle differences" between the standards adopted by the ADA and the Rehabilitation Act, but the standards are "generally the same" (citation omitted)). "Neither the ADA nor the Rehabilitation Act, however, applies to claims regarding the quality of mental health services, nor do the statutes create a remedy for medical malpractice." *Maccharulo v. N.Y.S. Dep't of Corr. Services*, No. 08 Civ. 301, 2010 WL 2899751, at *2 (S.D.N.Y. July 21, 2010) (citations and internal quotation marks omitted). "With no allegation of disparate treatment, no claim for discrimination under the ADA or Rehabilitation Act lies." *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003).

Plaintiff argues that therapy is the best treatment for his OCD, but he was denied therapy even though substance abuse patients received therapy. (Pl. Obj. 5, 42.) Although Plaintiff alleges that therapy was provided to substance abuse patients, he does not allege that therapy was provided to all individuals who did not have a disability. Plaintiff has merely alleged that the treatment protocol for substance abuse patients and OCD patients is different. This allegation cannot support an inference of disparate treatment. Once again, Plaintiff is challenging the adequacy of the treatment that he received and, therefore, has not stated a plausible claim of discrimination under the ADA or the Rehabilitation Act. *See Maccharulo*, 2010 WL 2899751, at

\*4 ("A challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services provided to non-disabled persons, is not a valid claim under the ADA or the Rehabilitation Act." (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998))); *Atkins*, 251 F. Supp. 2d at 1232 ("Kracht alleges that the inappropriate medical regime caused him to sleep all the time, miss recreation and meal opportunities and otherwise deprive him of any significant activity of any kind while he was at the jail. . . . Kracht is in essence challenging the adequacy of the mental health services provided at the Jail, not illegal disability discrimination." (citation and internal quotation marks omitted)). The Court finds that Plaintiff has failed to state a plausible claim for discrimination based on the alleged denial of services.

### 2. Failure to Modify Security Policies

In his objections, Plaintiff argues for the first time that Defendants also violated the ADA and the Rehabilitation Act "by refusing to accommodate his disability when plaintiff was forcibly disrobed, assaulted and [Defendants] inserted needles injecting mind affecting strong anti-psychotic drugs, because plaintiff did not want to take his jacket off."[10] (Pl. Obj. 12.) The ADA provides in relevant part that discrimination includes:

---

[10] Plaintiff also appears to be arguing in his objections that Defendants' denial of his request for therapy was a refusal to accommodate his disability. (Pl. Obj. Reply 5.) Plaintiff argues that therapy is the "best medication" for OCD. (Pl. Obj. 42.) The ADA "does not require a Title III defendant to provide a plaintiff with her ideal or preferred accommodation; rather, the ADA requires that a defendant provide a plaintiff with an accommodation that is 'reasonable' and permits the plaintiff to participate equally in the good, service, or benefit offered." *Andersen v. N. Shore Long Island Jewish Healthcare Sys.'s Zucker Hillside Hosp.*, No. 12 Civ. 1049, 2013 WL 784391, at \*10 (E.D.N.Y. Jan. 23, 2013), *report and recommendation adopted as modified*, 2013 WL 784344 (E.D.N.Y. Mar. 1, 2013); *see McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." (citing *Fink v. N.Y.C. Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995))). Defendants were not obligated under the ADA or the Rehabilitation Act to provide Plaintiff with his *preferred* treatment.

13

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

42 U.S.C. §§ 12182(b)(2)(A)(ii)–(iii); *see also Krist*, 688 F.3d at 94. The plaintiff must establish "that the defendants' failure to make 'reasonable modifications' to their policies, practices, and procedures deprived plaintiff of the ability to access the 'goods, services, facilities, privileges, advantages, or accommodations' available to those lacking plaintiff's disabilities." *Andersen v. N. Shore Long Island Jewish Healthcare Sys.'s Zucker Hillside Hosp.*, No. 12 Civ. 1049, 2013 WL 784391, at *9 (E.D.N.Y. Jan. 23, 2013), *report and recommendation adopted as modified*, 2013 WL 784344 (E.D.N.Y. Mar. 1, 2013) (citing *Krist*, 688 F.3d at 94). Unless the policies and procedures at issue "were applied in a discriminatory way, or were used to deprive plaintiff of access to a program, benefit, or service, plaintiff's ADA claim is insufficiently pled." *Id.* at *10.

Plaintiff contends that NSLIJ "requires, as a matter of policy and practice, that all persons with certain psychiatric conditions and symptoms who seek treatment in its emergency department and walk-in clinic must remove all their clothing and be searched." (Pl. Obj. 13.) Plaintiff claims that medical patients are permitted to "refuse the search and leave the walk-in clinic." *Id.* Plaintiff also claims that substance abuse patients are not required to go through the search procedures. *Id.* Plaintiff states that one of the symptoms of his OCD is that he "does not like to be touched, especially by strangers." *Id.* at 11. Plaintiff states that "[i]f anyone touches plaintiff against his will, he immediately will have to take a shower," and, "if this ritual is broken, plaintiff will go into severe depression." *Id.* Therefore, Plaintiff argues that Defendants

14

violated the ADA and the Rehabilitation Act, when they failed to modify their policy in order to accommodate his OCD.

Even if the Court assumes that Plaintiff could adequately allege a search policy that is discriminatorily applied, Plaintiff cannot establish that Defendants failed to modify that policy to accommodate his disability. Plaintiff alleges that when he entered the walk-in clinic, he was immediately asked to remove his coat. (Am. Compl. ¶ 37.) Plaintiff refused to remove his coat "since he had an activated recorder in his jacket pocket." *Id.* Plaintiff claims that this interaction followed:

> Plaintiff: Why do you — why do you want — Why do you want my coat for?
>
> Phillips: That's, uh, that's —
>
> Plaintiff: No there is no [unintelligible] — let me see it in writing. Let me see the procedure in writing.
>
> Phillips: Sir let me just tell you right now and stuff. You're you're going to force our hand in a second.
>
> Plaintiff: Yes. Go ahead.
>
> Phillips: Either you —

(Pl. Obj. 14.) Seconds later, Plaintiff claims that a security guard lifted him up and the assault began. (Pl. Obj. 14; Am. Compl. ¶¶ 37–38.) Plaintiff was taken to a nearby room and "assaulted and forcibly stripped, injected needles inserting strong mind affecting drugs without the approval of a doctor." (Pl. Obj. 14.) Plaintiff argues that these events were particularly traumatizing for Plaintiff because "[o]ne of the symptoms plaintiff suffers is that if anyone touches plaintiff against his will, he will go into a severe depression." *Id.* Plaintiff states that Dashevsky knew about this symptom, and Defendants "could have used less restrictive methods for conducting [the] search, such as pat-down wands, or face-to-face observations." *Id.* at 15.

15

Plaintiff argues that Defendants should have modified their policies and procedures to avoid any bodily contact in order to accommodate Plaintiff's OCD. However, when Plaintiff arrived at the clinic, he was asked to remove his own coat, which would not have involved bodily contact. Accordingly, no modification of this policy was required in order to accommodate Plaintiff's disability. After Plaintiff refused to take off his coat, he was assaulted, forcibly restrained, stripped and injected with antipsychotic drugs. (Am. Compl. ¶¶ 37–39.) Plaintiff does not argue that the assault was pursuant to the hospital's strip search policy. *Id.* In fact, he claims that Dashevsky ordered the assault. *Id.* at ¶ 42. In other words, Plaintiff has not alleged that he was subjected to any bodily contact pursuant to the hospital's alleged policy and practice of searching "all persons with certain psychiatric conditions and symptoms who seek treatment in its emergency department and walk-in clinic."[11] (Pl. Obj. 13.) Rather, he alleges that his clothes were removed as part of an unlawful assault. While Plaintiff may have a claim for assault, he does not have a claim for disability discrimination. Plaintiff's motion to amend the Amended Complaint to add claims under the ADA and the Rehabilitation Act for failure to modify the hospital's policies to accommodate his disability is denied as futile.[12] The Court

---

[11] Construing Plaintiff's papers liberally, Plaintiff is arguing that, even if he had removed his coat and even if Defendants had not assaulted him, he still would have been forcibly restrained and injected with antipsychotic drugs pursuant to the hospital's policy regardless of his disability. This argument is based on hypothetical events and is not sufficient to state a plausible claim.

[12] Plaintiff also alleges that Defendants violated the ADA and Rehabilitation Act when (1) they falsely imprisoned him and (2) tried to force him to sign the March 30, 2011 that would exclude him from the hospital. (Pl. Obj. 31, 41.) Plaintiff cannot state a plausible claim based on his hospitalization that he was denied access to a public accommodation on the basis of his disability. Moreover, the March 30, 2011 letter advises Plaintiff of the hospital's policies and does not exclude him from the hospital. (Am. Compl. Ex. I.) Plaintiff has not stated a plausible claim for discrimination based on his hospitalization or the March 30, 2011 letter.

adopts Magistrate Judge Bloom's recommendation and dismisses Plaintiff's ADA and Rehabilitation Act claims.

### ii. Retaliation

Plaintiff alleges that Defendants hospitalized him in retaliation for his March 16, 2011 letter. (Am. Compl. ¶¶ 64–65.) In that letter, Plaintiff complained that he was being discriminated against and complained about the hospital's billing practices and inadequate care. *Id.* at ¶ 64. Plaintiff alleges that Defendants hospitalized him in order "to prevent the Plaintiff from exercising his 1st Amendment right to freedom of expression, and instead of changing the hospital policies, and discriminatory practices they decided to cover up the actions just by getting rid of the Plaintiff." *Id.* at ¶ 65. Magistrate Judge Bloom recommended that Plaintiff's retaliation claims be dismissed because a claim for a violation of the First Amendment can only be brought against state actors, not private individuals. (Report & Recommendation 12.) Plaintiff does not object to this finding but rather argues that his retaliation claims are actually brought pursuant to the ADA and the Rehabilitation Act. (Pl. Obj. 10–11, 45–46.)

To state a claim for retaliation under the ADA or the Rehabilitation Act, the plaintiff must establish: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002). The term "protected activity" refers to an "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). In order to constitute protected activity, "a plaintiff's complaint must be sufficiently pointed to be reasonably understood as a complaint of discrimination." *Okoro v. Marriott Int'l, Inc.*, No. 07

17

Civ. 165, 2008 WL 4449386, at *6 (S.D.N.Y. Sept. 29, 2008). Here, Plaintiff has failed to allege any protected activity and, therefore, has not stated a plausible claim of retaliation.

In the March 16, 2011 letter, which is attached to the Amended Complaint, Plaintiff raises two concerns.[13] (Am. Compl. Ex. C.) First, Plaintiff states that he was "discriminated" against by Walfisch, when she interrogated him on March 11. *Id.* Plaintiff then references an incident 12 years earlier, when Walch "filed a false complaint with the police stating that [Plaintiff] made threatening phone calls to the Hospital. This is profiling considering a few days later, the police caught the person who made the calls." *Id.* Second, Plaintiff complains of the limited time that attending doctors spend with patients and the substantial amount of money that the hospital charges insurance companies. *Id.* Plaintiff does not make any reference to disability-based discriminatory policies or practices. If anything, Plaintiff appears to be expressing concern regarding racial profiling that he has been subjected to at the hospital. (Am. Compl. Ex. C.) In the Amended Complaint, Plaintiff states that he repeatedly complained about the racial discrimination he experienced at the hands of its mostly white staff. (Am. Compl. ¶¶ 17, 20, 21.) Moreover, when Plaintiff describes the incident that is the subject of the March 16 letter, he specifies that Walfisch is a "white lady." (Am. Compl. ¶ 28.) In any event, Plaintiff's letter does not contain any language that could reasonably be understood to be a complaint of discrimination on the basis of disability.

Plaintiff has not alleged any protected activity and, therefore, has failed to state a plausible claim of retaliation under the ADA or the Rehabilitation Act.[14] *See Williams v. N.Y.C.*

---

[13] In deciding whether to dismiss a complaint under Rule 12(b)(6), a district court is permitted to consider documents attached to the complaint. *See Taylor v. Vt. Bd. of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

[14] Plaintiff argues that he "clearly stated that plaintiff was seeking [a] reasonable accommodation for his OCD and depression." (Pl. Obj. 46.) A request for a reasonable

18

*Hous. Auth.*, No. 07 Civ.7587, 2009 WL 804137, at *8 (S.D.N.Y. Mar. 26, 2009), *aff'd*, 408 F. App'x 389 (2d Cir. 2010) (dismissing the plaintiff's retaliation claim because "her complaints to [the New York City Housing Authority] about the condition of the garbage facilities at the Complex or the maintenance of the elevators because these complaints were not 'protected activities' for the purpose of establishing a retaliation claim in connection with allegations of disability discrimination"); *Thomas v. Dep't of Veterans Affairs*, No. 05 Civ. 5348, 2006 WL 1636738, at *14 (S.D.N.Y. Apr. 3, 2006), *report and recommendation adopted*, 2006 WL 1594481 (S.D.N.Y. June 6, 2006) (dismissing retaliation claim where the plaintiff had failed to allege any protected activity).

### iii. Supplemental Jurisdiction

Plaintiff also objects to Magistrate Judge Bloom's recommendation that the Court decline to exercise supplemental jurisdiction. (Pl. Obj. 51–52.) Having dismissed Plaintiffs' federal law claims, the Court adopts Magistrate Judge Bloom's recommendation and declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Sudler v. City of New York*, 689 F.3d 159, 178 n.25 (2d Cir. 2012).

## III. Conclusion

Having considered Magistrate Judge Bloom's Report & Recommendation and the accompanying objections, the Court adopts the Report & Recommendation in its entirety and

---

accommodation is protected activity. *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002). Presumably, Plaintiff is referencing his request for therapy. (Pl. Obj. Reply 5.) However, as previously discussed, Plaintiff's request for certain treatment, as opposed to other treatment, does not constitute an accommodation request and, therefore, is not protected activity.

19

grants Defendants' motion to dismiss the Amended Complaint. Plaintiff's motion to amend the Amended Complaint is denied as futile. Plaintiff's claims brought pursuant to Title I and III of the ADA, Section 504 of the Rehabilitation Act and 42 U.S.C §§ 1983, 1985 and 1986 are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The Clerk of Court is directed to close this case.

SO ORDERED.

MARGO K. BRODIE
United States District Judge

Dated: March 25, 2013
      Brooklyn, New York