UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

PRASANNA GOONEWARDENA,

                                Plaintiff,              **MEMORANDUM & ORDER**
                                                        11-CV-2456 (MKB)

                v.

NORTH SHORE LONG ISLAND JEWISH
HEALTH SYSTEM, THE ZUCKER HILLSIDE
HOSPITAL, LUDMILA DASHEVSKY, TINA
WALCH, PAULINE WALFISCH, MAHENDRA
AIREN, REMY GALLANT, CHRISTOPHER
PHILLIPS, IN SOON YANG, JOHN
KANE, MARY AFFLERBACH, EDWARD
REDMOND, JOHN DOE and GERALD RYAN,

                                Defendants.
----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Prasanna Goonewardena, proceeding *pro se*, filed the above-captioned action on

May 20, 2011.  On January 10, 2012, Plaintiff filed an Amended Complaint against Defendants

North Shore Long Island Jewish Health System ("NSLIJ"), the Zucker Hillside Hospital

("Zucker Hillside"), Ludmila Dashevsky, Tina Walch, Pauline Walfisch, Mahendra Airen, Remy

Gallant, Christopher Phillips, In Soon Yang, John Kane, Mary Afflerbach, Edward Redmond,

John Doe and Gerald Ryan, alleging, among other things, that Defendants deprived Plaintiff of

access to services and treatment programs on the basis of his disability, and conspired to

hospitalize him involuntarily in retaliation for his complaints about discrimination.  The

Amended Complaint alleged claims pursuant to Title I and Title III of the Americans with

Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act (the "Rehabilitation Act"), 42

U.S.C §§ 1983, 1985 and 1986, and various state law claims.  On May 11, 2012, Defendants

moved to dismiss the Amended Complaint.  (Docket Entry No. 142.)  Judge Nicholas G.

Garaufis[1] referred the motion to Magistrate Judge Lois Bloom for a report and recommendation. (Docket Entry No. 71.) On November 5, 2012, Magistrate Judge Bloom filed a report and recommendation ("R&R"), recommending that Defendants' motion to dismiss be granted in its entirety and Plaintiff be denied further leave to amend. (Docket Entry No. 147.) Plaintiff timely filed objections and requested permission to amend the Amended Complaint. (Docket Entry No. 153.) On March 25, 2013, the Court adopted Judge Bloom's R&R in its entirety, granting Defendants' motion to dismiss the Amended Complaint and denying Plaintiff's motion to further amend the Amended Complaint. *Goonewardena v. N. Shore Long Island Jewish Health Sys.*, No. 11-CV-2456, 2013 WL 1211496 (E.D.N.Y. Mar. 25, 2013). Judgment was entered on March 25, 2013. (Docket Entry No. 157.) Plaintiff now moves the Court, pursuant to Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure for vacatur of the Court's March 26, 2013 judgment and sanctions against defense counsel. Defendants oppose Plaintiffs' motion, move for sanctions against Plaintiff, and request that the Court issue an order reflecting Plaintiff's alleged voluntary dismissal of all claims against Defendant Gallant. For the reasons discussed below, Plaintiff's motion for vacatur is denied and Defendants' motion for sanctions and request for a voluntary dismissal order is denied.

## I. Background

The facts alleged in the Amended Complaint are assumed to be true for the purposes of this motion. Plaintiff is a South Asian man of Sri Lankan origin. (Am. Compl. ¶ 8.) Plaintiff suffers from Obsessive Compulsive Disorder ("OCD").[2] (*Id.* ¶ 13.) From 1998 until March 30,

---

[1] The case was reassigned to the undersigned on March 23, 2012.

[2] Plaintiff alleges in the Amended Complaint that he also suffers from Schizaoaffective disorder, (Am. Compl. ¶ 13), but states in his objections that he suffers from OCD and

2011, Plaintiff was a patient at Zucker Hillside. (*Id.* ¶ 14.) Plaintiff's doctor at Zucker Hillside was Defendant Dashevsky. (*Id.* ¶ 15.) Plaintiff alleges that, as early as 2008, he complained to Dashevsky that he believed that she and Defendant Walch, the director of the aftercare unit, were discriminating against him.[3] (*Id.* ¶ 15.) In 2008, Plaintiff complained to Dashevsky that the hospital had "discriminatory practices" and that he was not receiving "adequate care." (*Id.* ¶ 16.) Dashevsky threatened to admit Plaintiff as an inpatient and "close his file," if he complained to the administration. (*Id.*) After that session, Plaintiff feared that he would "be imprisoned for exercising his 1st Amendment rights." (*Id.* ¶ 17.) Plaintiff did not believe that he was being properly treated for his illness, and he alleges that the medication he was prescribed made his OCD worse. (*Id.*) Plaintiff alleges that Zucker Hillside had 20 attending doctors, all of whom were white, and its doctors only spent 15 minutes with each patient. (*Id.*) Plaintiff's sister spoke with Defendant Kane.[4] (*Id.*) She told Kane that she believed that the hospital was running a scam and that Plaintiff was being discriminated against because of his race, color and national origin. (*Id.*) Kane said that he would look into the allegations.[5] (*Id.* ¶ 18.) Walch called Plaintiff's sister and told her that Plaintiff should go elsewhere if he was not happy with the service he was receiving. (*Id.*)

Plaintiff did not have any money, so he decided to continue to be treated at Zucker

---

depression but not from Schizoaffective disorder or any other illness, (Pl. Obj. 6).

[3] As noted in the R&R, the term "aftercare unit" appears to refer to the "Hillside Hospital Adult Ambulatory Care Unit for Outpatient Treatment." (R&R 8 n.4.)

[4] The Court's March 25, 2013 Memorandum and Order stated that Plaintiff's sister *went* to Zucker Hillside and spoke with Kane. Plaintiff states that the Court misread his Amended Complaint. (Pl. Mem. 2.)

[5] The Court's March 25, 2013 Memorandum and Order stated that Kane told Plaintiff's sister that he would speak with Walch. Plaintiff states that the Court misread his Amended Complaint again. (Pl. Mem. 2.)

Hillside. (*Id.* ¶ 19.) On June 10, 2010, Plaintiff met with Walch and "explained the situation to her that the Plaintiff was discriminated against because of his race, and was on the wrong medications . . . ." (*Id.* ¶ 21.) Walch told Plaintiff that he needed to stop complaining or he would be hospitalized. (*Id.*) Plaintiff alleges that at his next appointment with Dashevsky, she was angry at Plaintiff for meeting with Walch and said that he was a troublemaker. (*Id.* ¶ 22.) A few weeks later, Plaintiff met with Mary Ann Ricardo, an employee at Zucker Hillside, and asked why the attending doctors only see patients for 15 minutes. (*Id.* ¶ 23.) Ricardo told Plaintiff that the appointments are short because attending doctors only prescribe medication — they do not provide therapy. (*Id.*) Ricardo told Plaintiff to see a social worker if he needed therapy. (*Id.*) Plaintiff began looking for a social worker. (*Id.* ¶ 24.)

Plaintiff always arrived one hour early for his appointments and, while he was waiting, would speak with various Zucker Hillside employees. (*Id.* ¶ 25.) On March 11, 2011, Plaintiff was at the hospital scheduling an appointment to see Dashevsky. (*Id.* ¶ 28.) On his way out of the hospital, Plaintiff was reading a list of active medical residents posted on the wall. (*Id.*) While he was reading the list, a Caucasian woman approached Plaintiff, told him that she knew who he was and to leave the area immediately. (*Id.*) Plaintiff returned to the second floor, where he had been to make his appointment, and encountered Ricardo. (*Id.* ¶ 29.) Plaintiff asked Ricardo for the name of the woman who had harassed him, and Ricardo told him it was Defendant Walfisch, the aftercare program director. (*Id.*) Plaintiff told Ricardo "to tell Ms. Walfisch that if she ever threatened the Plaintiff again, Plaintiff will press charges against her for harassment." (*Id.*)

On March 16, 2011, Plaintiff wrote a letter to Dashevsky, informing her that he was "going to take legal actions against the hospital if the hospital [did] not change their policies."

(*Id.*) Plaintiff alleges that this "letter did not sit well with Dr. Dashevsky, Dr. Walch and Ms. Walfisch." (*Id.* ¶ 30.) On March 30, 2011, Plaintiff had an appointment with Dashevsky. (*Id.*) Plaintiff arrived early for his appointment, so he could meet with Kane. (*Id.*) In light of the number of times Dashevsky threatened Plaintiff with hospitalization, Plaintiff carried a digital recorder with him that day. (*Id.*) When Plaintiff arrived at Kane's office, his secretary recognized Plaintiff and told Plaintiff that Kane was not available. (*Id.*) Plaintiff left his contact information and asked the secretary to tell Kane that Plaintiff was going to take legal action against the hospital. (*Id.*) Plaintiff returned to the aftercare building but did not go to the second floor for his appointment with Dashevsky. (*Id.* ¶¶ 30–31.) Instead, Plaintiff waited in the first floor reception area. (*Id.* ¶ 31.) While he was waiting, Plaintiff overheard the receptionist say his last name to someone on the telephone. (*Id.*) Plaintiff asked who she was speaking to, and she responded that she was speaking with his doctor. (*Id.*)

Michael Levene arrived and asked the receptionist if "that guy" was still in the reception area. (*Id.*) The receptionist pointed at Plaintiff, and Plaintiff asked Levene why he was asking about Plaintiff. (*Id.*) Levene responded that someone had complained to security about Plaintiff. (*Id.*) Plaintiff went up to the second floor, and Dashevsky told Plaintiff that she would see him at 5:00 p.m. (*Id.* ¶ 32.) A few minutes before five, Plaintiff went outside to activate his audio recorder. (*Id.* ¶ 33.) Dashevsky then came and took Plaintiff to her office. (*Id.* ¶ 33.) When Plaintiff asked why she had called the receptionist, Dashevsky told him that someone had complained about his visit to Kane. (*Id.*) A few minutes into the conversation, Defendant Ryan, the hospital's security director, arrived. (*Id.* ¶ 34.) He asked Plaintiff to sign a document ("Agreement") without reading it and without allowing Plaintiff to consult a lawyer. (*Id.* ¶¶ 34–35.) The Agreement, which is attached to the Amended Complaint, states:

> On at least two occasions over the past month, you were observed on the Zucker Hillside Hospital (ZHH) campus without an appointment attempting to engage in contact with staff who are not involved in your care. On at least one occasion you were asked to leave the premises. This pattern of repeated behavior is inappropriate and not related to your care plan here at ZHH. While the ZHH is dedicated to outstanding patient care, anyone in need of treatment without an appointment must report to the Hillside Evaluation Clinic ("HEC") or the Emergency Department. Please be advised of the following:
> - You are not authorized to enter the ZHH campus without a scheduled appointment unless you report to the HEC or the LIJ Emergency Department.
> - Upon finishing your appointment, you should depart the premises in a timely manner.
> - Any questions or treatment issues should be discussed with your treating doctor.
> - Failure to abide by this policy will result in your expulsion from the grounds by Security.

(Agreement, annexed to Am. Compl. as Ex. I.) Plaintiff refused to sign the letter, and Dashevsky told him, "in the mean time [sic] you have to be in the hospital." (Am. Compl. ¶ 35.) Plaintiff still refused to sign the letter, and Dashevsky told the officer to take Plaintiff to the walk-in clinic. (*Id.*)

Plaintiff went to the walk-in clinic, and, when he arrived, he asked Defendant Gallant, one of the hospital's mental health workers, if he could see the director. (*Id.* ¶ 37.) Gallant asked Plaintiff to take his jacket off. (*Id.*) Plaintiff refused "since he had an activated recorder in his jacket pocket." (*Id.*) Plaintiff asked to use the bathroom, and Defendant Phillips approached and said, "Sir you are going to force our hands in a second." (*Id.*) Plaintiff responded, "You do what you got to do." (*Id.*) A security guard that had been standing behind Plaintiff approached Plaintiff and picked him up. (*Id.*) Phillips, Gallant, Wane Thompson and two other security guards took Plaintiff to another room and "forced the Plaintiff fac[e] down on a mattress that was on the floor." (*Id.*) One of the security guards put his knees on Plaintiff's back, and Phillips

started to punch Plaintiff.  (*Id.* ¶ 38.)  Plaintiff screamed for help, and Phillips smothered

Plaintiff to keep him quiet.  (*Id.* ¶ 39.)  Plaintiff eventually stopped struggling, and his clothes

and shoes were removed.  (*Id.* ¶ 40.)  Plaintiff was injected with antipsychotic drugs.  (*Id.* ¶ 38.)

Plaintiff alleges that this assault was ordered by Dashevsky.  (*Id.* ¶ 42.)

A few hours later, Defendant Redmond arrived and took Plaintiff to the inpatient unit.

(*Id.* ¶ 41.)  Plaintiff asked for his clothes back, but Redmond told Plaintiff that he would not get

his clothes back until he got to the inpatient unit.  (*Id.*)  On March 31, 2011, Plaintiff wrote to the

chief administrator of Zucker Hillside and requested an investigation into the assault.  (*Id.* ¶ 45.)

The next day, Defendant Afflerbach conducted a short interview with Plaintiff and then wrote a

"sham" incident report.  (*Id.* ¶ 46.)  The unit chief examined Plaintiff and determined that he

could be discharged.  (*Id.* ¶ 44.)  Before he was discharged, Nancy Conti informed Plaintiff that

Dashevsky, Walch and Walfisch had "decided not to take the Plaintiff back to the after care unit

to treat the Plaintiff because of his disability."  (*Id.*)  Plaintiff immediately wrote a letter to Conti,

stating that this action was a violation of Title III of the ADA.  (*Id.*)  Plaintiff was discharged on

April 6, 2011.  (*Id.* ¶ 47.)

## II.  Discussion

### a.  Standard of Review

#### i.  Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration will

generally be denied unless the moving party can point to controlling decisions or data that the

court overlooked — matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." [6] *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* Local Civ. R. 6.3 (The moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."); *Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 734 (2d Cir. 2013) ("To warrant reconsideration, a party must 'point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" (quoting *Shrader*, 70 F.3d at 257)).

It is thus "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)), *as amended* (July 13, 2012). In other words, "[r]econsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hidalgo v. New York*, No. 11-CV-5074, 2012 WL 3598878, at *1 (E.D.N.Y. Aug. 20, 2012) (citation and internal quotation marks omitted). A motion for reconsideration "should not be used as a vehicle simply to voice disagreement with the Court's decision, . . . nor does it present 'an occasion for repeating old arguments previously rejected or an opportunity for making new arguments that could have previously been made.'" *Premium Sports Inc. v. Connell*, No. 10-CV-3753, 2012 WL 2878085, at *1 (S.D.N.Y. July 11,

---

[6] Plaintiff states that he is not moving for reconsideration. (Pl. Reply 3.) However, Plaintiff asks the Court to "Vacate its Order dismissing Plaintiff's claim" and challenges the Court's decision. (Pl. Mem. 1.) Unless the Court reconsiders its prior ruling and reaches a contrary position, pursuant to Rule 6.3 the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the Court has no basis to vacate its prior decision. The Court will consider Plaintiff's papers as a motion to vacate the judgement entered by the Clerk of the Court on March 26, 2013 and to reconsider its March 25, 2013 Memorandum and Order.

2012) (citations omitted). Moreover, "a party may not, on a motion for reconsideration, raise an argument for the first time." *Image Processing Tech., LLC v. Canon Inc.*, No. 10-CV-3867, 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012) (alteration, citation and internal quotation marks omitted) (collecting cases). In order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters *that were put before the Court on the underlying motion*." *Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (emphasis added) (citations and internal quotation marks omitted); *see also Henderson v. City of New York*, No. 05-CV-2588, 2011 WL 5513228, at *1 (E.D.N.Y. Nov. 10, 2011) ("In order to have been 'overlooked,' the decisions or data in question must have been put before [the court] on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." (citations and internal quotation marks omitted)); *cf. Stoner v. Young Concert Artists, Inc.*, No. 11-CV-7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because a party is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources." (alteration, citations and internal quotation marks omitted)).

### ii. Rule 60(b)

Federal Rule of Civil Procedure 60(b) reads in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it

> prospectively is no longer equitable; or (6) any other reason that
> justifies relief.

Fed. R. Civ. P. 60(b)(1)–(5). "Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'" *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 760 (2d Cir. 1981)). As such, "Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do not apply." *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 109 (2d Cir. 2012). In order to qualify for Rule 60(b)(6) relief, a plaintiff must also demonstrate either "extraordinary circumstances, or extreme hardship." *DeCurtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (quoting *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)); *see also Stevens*, 676 F.3d at 67 (noting that "courts require the party seeking to avail itself of [Rule 60(b)(6)] to demonstrate 'extraordinary circumstances' warrant relief" (citing *Liljeberg Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988))). "As a general matter, a mere change in decisional law does not constitute an 'extraordinary circumstance' for the purposes of Rule 60(b)(6)." *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013) (quoting *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004)). "Properly applied[,] Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Id.* (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). Such a motion "must be made within a reasonable time," *Stevens*, 676 F.3d at 67 (citing Fed. R. Civ. P. 60(c)), and cannot be used "as a substitute for appeal." *Stevens v. Schneiderman*, No. 05-CV-10819, 2011 WL 6780583, at *4 (quoting *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009)).

### iii. Motion for Sanctions

Rule 11 of the Federal Rules of Civil Procedure provides that a court may impose sanctions either by motion or by its own initiative, when (1) a pleading, written motion or other paper is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) the claims, defenses and other legal contentions raised are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" (3) the factual contentions do not have any evidentiary support or are unlikely to have any evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are not warranted on the evidence or are not "reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)–(c); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("Sanctions may be — but need not be — imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous."). "[E]ven when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion.'" *Ipcon Collections*, 698 F.3d at 63 (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)). Enforcing Rule 11 requires "notice and a reasonable opportunity to respond," and "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c).

### b. Motion for Reconsideration

#### i. ADA/Rehabilitation Act Claims[7]

Title III of the ADA provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Section 12182(b)(2)(A) enumerates, for purposes of subsection (a), various acts that constitute "discrimination." *See* 42 U.S.C. § 12182(b)(2)(A)(i)–(v). To state a claim of discrimination under Title III, a plaintiff must "establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012) (citation

---

[7] "Since the standards adopted by Titles II and III of the ADA are, in most cases, the same as those required under the Rehabilitation Act, we consider the merits of these claims together." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85, *opinion corrected*, 511 F.3d 238 (2d Cir. 2004); *see also Roggenbach v. Touro Coll. of Osteopathic Med.*, No. 13-CV-221, 2014 WL 1046697, at *3 n.2 (S.D.N.Y. Mar. 13, 2014) (analyzing ADA and Rehabilitation Act claims together); *McInerney v. Rensselaer Polytechnic Inst.*, No. 05-CV-1267, 2013 WL 5614263, at *4 (N.D.N.Y. Oct. 11, 2013) ("Title III and § 504 [of the Rehabilitation Act] provide similar protections to individuals with disabilities and the merits of such claims are generally considered together."); *Andersen v. N. Shore Long Island Jewish Healthcare Sys. Zucker Hillside Hosp.*, No. 12-CV-1049, 2013 WL 784391, at *11 (E.D.N.Y. Jan. 23, 2013) ("A plaintiff's burden under the Rehabilitation Act is 'nearly identical' to that which plaintiff must meet pursuant to the ADA." (citation omitted)), *report and recommendation adopted as modified*, No. 12-CV-1049, 2013 WL 784344 (E.D.N.Y. Mar. 1, 2013). With respect to the Rehabilitation Act, "[t]o establish a prima facie violation under Section 504, a plaintiff must demonstrate: (1) she is a 'qualified individual' with a disability; (2) the defendants are subject to Section 504; and (3) she was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilit[y].'" *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) (alterations in original) (quoting *Powell*, 364 F.3d at 86).

and internal quotation marks omitted); *see also Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008) (same).  Under any manifestation of "discrimination" specified in § 12182(b)(2)(A), a plaintiff must show that he was discriminated against "'on the basis of' his alleged disabilities."  *Maxwell v. New York Univ.*, 407 F. App'x 524, 528 (2d Cir. 2010); *see also Roggenbach v. Touro Coll. of Osteopathic Med.*, No. 13-CV-221, 2014 WL 1046697, at *4 (S.D.N.Y. Mar. 13, 2014) ("The Plaintiff must also establish that Defendant discriminated against him within the meaning of the ADA, and that this 'exclusion or discrimination was due to [his] disability'" (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)); *McInerney v. Rensselaer Polytechnic Inst.*, No. 05-CV-1267, 2013 WL 5614263, at *4 (N.D.N.Y. Oct. 11, 2013) ("To assert a claim under [the ADA and the Rehabilitation Act], plaintiff must establish . . . that he was denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or was otherwise discriminated against by defendant, *by reason of* his disability." (emphasis added) (citing *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85, *opinion corrected*, 511 F.3d 238 (2d Cir. 2004))).

The Court previously held that Plaintiff failed to state a claim based on (1) the denial of access to treatment and services, and (2) failure to modify security policies.  *See Goonewardena*, 2013 WL 1211496, at *6–9.  Plaintiff moves the Court to reconsider its decision, arguing that the Court ignored controlling law and operative facts.  For the reasons discussed below, the Court affirms its prior decision.

### A.  Intentional Discrimination

"Title III and Rehabilitation Act claims include claims for intentional discrimination, disparate impact, and failure to accommodate."  *Cardona v. Cmty. Access, Inc.*, No. 11-CV-4129, 2013 WL 304519, at *6 (E.D.N.Y. Jan. 25, 2013) (citing *Fulton*, 591 F.3d at 43); *Fulton*,

591 F.3d at 43 ("A qualified individual can base a discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." (quoting *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003))). The Court previously dismissed Plaintiff's intentional discrimination claims under both the ADA and the Rehabilitation Act. In an effort to revive those claims, Plaintiff identifies several provisions of the ADA and the Rehabilitation Act, and their accompanying regulations, that the Court did not specifically reference in its March 25, 2013, Memorandum and Order. The Court discusses each in turn.

### 1. Segregation

Plaintiff argues that he was segregated based on his disability, that such action was in violation of 42 U.S.C. § 12182(b)(2)(A)(iii), and that the Court failed to address the claim. (Pl. Mem. 4–5.) Specifically, Plaintiff argues that Dashvesky asked him to sign the Agreement which, from the Agreement's plain language, sought to "segregate plaintiff based on perceived disability." (*Id.* at 4.) As discussed above, *supra* Part b.i, to state a valid disability discrimination claim, a Plaintiff must show, among other things, that he was discriminated against within the meaning of the ADA. Plaintiff's argument that the Court ignored 42 U.S.C. § 12182(b)(2)(A)(iii) is unavailing because a discrimination claim, as defined in that subsection, is not supported by Plaintiff's allegations.

Section 12182(b)(2)(A)(iii) states that discrimination includes:

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals *because of the absence of auxiliary aids and services* . . . .

42 U.S.C. § 12182(b)(2)(A)(iii). Plaintiff does not make now, nor did he make previously, any factual allegations from which the Court reasonably could draw the inference that Plaintiff was

being "segregated," or otherwise treated differently from others, because of the Defendants' lack of auxiliary aids and services. *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (finding that a plaintiff with impaired vision stated a claim under this provision of the ADA based on the defendants' employees' unwillingness to communicate to plaintiff "the range of options available to her"); *see also Naiman v. New York Univ.*, No. 95-CV-6469, 1997 WL 249970, at *2 (S.D.N.Y. May 13, 1997) (noting that examples of auxiliary aids include interpreters, notetakers, telephone handset amplifiers and closed caption decoders and holding that plaintiff stated a claim under 42 U.S.C. § 12182(b)(2)(A)(iii) based on defendant's failure to provide a qualified sign language interpreter). Plaintiff's factual allegations do not and cannot state a claim under this provision of the ADA.

### 2. Denial of Access to Therapy

Plaintiff argues the Court abused its discretion when evaluating his disability discrimination claim based on lack of access to therapy. (Pl. Mem. 12.) Specifically, Plaintiff argues that the Court (1) ignored statutes and facts, (2), relied on inapposite caselaw, (3) erroneously established a right to medication, and (4) misrepresented Plaintiff's argument. (*Id.* at 8–12.) The Court addresses each argument below.

In the Amended Complaint, Plaintiff alleged that he was denied access to treatment at the aftercare unit. (Am. Compl. ¶¶ 58, 62.) In the Court's March 25, 2013 Memorandum and Order, the Court understood Plaintiff to be alleging that he did not receive therapy while substance abuse patients did. *See Goonewardena*, 2013 WL 1211496, at *7. The Court emphasized that Plaintiff did "not allege that therapy was provided to all individuals who did not have a disability." *Id.* Consequently, the Court understood Plaintiff to have "merely alleged that the

treatment protocol for substance abuse patients and OCD patients is different" and held that such an allegation did not "support an inference of disparate treatment." *Id.*

Plaintiff now argues that the treatment for substance abuse patients and OCD patients is the same as both entail therapy, however, Plaintiff was not given therapy and that this denial of services resulted in "disparate treatment." (Pl. Mem. 8.) Plaintiff misunderstands the law. When bringing a claim based on intentional discrimination (disparate treatment), it is not enough to allege that one has a disability and one was denied services. Rather, it is critical that a plaintiff allege that he was denied services *because of* his disability.[8] *See Alexiadis v. New York Coll. of Health Professions*, 891 F. Supp. 2d 418, 431 (E.D.N.Y. 2012) (denying summary judgment to defendants given "sufficient [evidence] to create a disputed issue of material fact as to whether [defendants] were aware of plaintiff's HIV-positive status and engaged in the adverse actions against him *because of* that status." (emphasis added)); *see also Johnson v. Levy*, 812 F. Supp. 2d 167, 180 (E.D.N.Y. 2011) ("To establish violation of Title III of [the] ADA or the Rehabilitation Act a plaintiff must plead that: . . . he or she was denied opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, *by reason of* his or her disability.").

In support of his discrimination claim, Plaintiff argues that the Court ignored evidence that Dashevsky stated that she did not assign Plaintiff a therapist "because she wanted to keep Plaintiff away from others because plaintiff has a history of harassing people." (Pl. Mem. 8–9.) Plaintiff points to the transcription of a secretly-recorded conversation he had with Dashevsky

---

[8] The Court also notes that an "intent to discriminate" is not necessary to state a valid claim under a theory of failure to make a reasonable accommodation. *See Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) (addressing a reasonable accommodation claim and noting that the "the ADA was [not] intended to allow recovery only for intentional discrimination").

wherein she stated that Plaintiff was obsessed with a certain doctor. (Tr. 10:234–239, annexed to Pl. Objections as Ex. 1.) This evidence does not help Plaintiff because it does not support the conclusion that Plaintiff was denied any service because of his disability.

Plaintiff argues that any reliance on *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998), was in error because *Doe* involved "Title II" whereas Plaintiff's case involves "Title III."[9] (Pl. Mem. 9.) Plaintiff is incorrect in his belief that the Court cannot rely on Title II caselaw. *See McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 n.2 (2d Cir. 2012) ("Although [plaintiff] brought the instant case pursuant to Title II of the ADA, we may look for guidance to case law under Title I of the ADA . . . ."); *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995) (applying same standard in Title III case as under Title II); *accord Bauer v. Muscular Dystrophy Ass'n, Inc.*, 427 F.3d 1326, 1333 (10th Cir. 2005) (noting that reference to Title I case law was appropriate in Title III case).

In addition, Plaintiff argues that the Court erroneously held that medication "is a right to everyone including non-handicapped but therapy is not a right because it is not a medication." (Pl. Mem. 10.) Plaintiff further argues that "Judge Bloom and Judge Brodie ruled medication is a right." (*Id.*) Plaintiff misreads the Court's opinion. As discussed above, the Court did not hold dismiss Plaintiff's Complaint because his claim was based on his request for therapy as opposed to medicine; rather, the Court held that Plaintiff failed to allege that he was denied

---

[9] Plaintiff argues that the Court incorrectly quoted *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) in support of its conclusion that Plaintiff failed to establish an inference of discrimination. (Pl. Mem. 9.) The Court understands Plaintiff's confusion but it did not misquote *Doe.* The Court accurately quoted *Maccharulo v. New York State Dep't of Corr. Servs.*, No. 08-CV-301, 2010 WL 2899751, at *4 (S.D.N.Y. July 21, 2010), which in turn was citing (as support) *Doe v. Pfrommer. See Goonewardena v. N. Shore Long Island Jewish Health Sys.*, No. 11-CV-2456, 2013 WL 1211496, at *7 (E.D.N.Y. Mar. 25, 2013).

*anything* that was provided to individuals who did not have a disability. *See Goonewardena*, 2013 WL 1211496, at *7.

Plaintiff further argues that the Court misconstrued his argument by characterizing it as based on the "adequacy of services provided" as opposed to the outright denial of services. (Pl. Mem. 11–12.) The Court did in fact restate Plaintiff's argument. However, the Court did so because Plaintiff did not state a plausible claim that he was discriminated against because of his disability nor did he allege that Defendants denied him any services available to non-disabled people. Instead, Plaintiff disagreed with the quality and type of services provided to him as opposed to other patients. *See Goonewardena*, 2013 WL 1211496, at *6–7; *cf. Cercpac v. Health & Hospitals Corp.*, 147 F.3d 165, 168 (2d Cir. 1998) ("the disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided"). Such a claim is not cognizable under the ADA or the Rehabilitation Act.

Finally, Plaintiff argues that the Court ignored controlling law and regulations thereby abusing its discretion. (*See* Pl. Mem. 12.) First, Plaintiff cites to the Rehabilitation Act regulations which prohibit "[a]fford[ing] a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others, . . . . Provid[ing] a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others" and "limit[ing] a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service." 45 C.F.R. § 84.4(B)(1)(ii)–(iii), (vii). Plaintiff argues that his exclusion from therapy resulted in "unequal services" in violation of § 84.4(B)(1)(ii)–(iii), and (vii). However, these regulations provide no more protection than the Rehabilitation Act itself, nor do

they alter the Court's previous analysis as Plaintiff is still required to, and still fails to, state

factual allegations from which the Court could draw a reasonable inference of discrimination.

Plaintiff also argues that the Court did not address his claim under 42 U.S.C § 12182(b)(2)(A)(i).

Section 12182(b)(2)(A)(i) states in pertinent part that discrimination under the ADA includes

"the imposition or application of eligibility criteria that *screen out* . . . an individual with a

disability . . . from fully and equally enjoying any goods, services, facilities, privileges,

advantages, or accommodations . . . ." 42 U.S.C § 12182(b)(2)(A)(i) (emphasis added). Plaintiff

argues that Dashevky screened Plaintiff from receiving therapy based on his disability. Citation

to § 12182(b)(2)(A)(i) does not warrant vacatur. *See Strouchler v. Shah*, 891 F. Supp. 2d 504,

516 (S.D.N.Y. 2012) (explaining that this provision of the Title III seeks to ensure a setting

where disabled and non-disabled interact in an integrated setting). Plaintiff clings to a relevant

verb found within the ADA but does not point to any law or fact that the Court overlooked in

holding that Plaintiff failed to establish that he was denied, segregated or screened out of services

because of his disability. *See Roggenbach*, 2014 WL 1046697, at *5 (finding that plaintiff failed

to state a Title III discrimination claim for failure to plead facts from which a plausible inference

of discrimination could be drawn). Contrary to Plaintiff's argument, he does not present any

cause of action that the Court ignored. As discussed above, both Judge Bloom in the R&R and

the Court found that Plaintiff failed to state a plausible claim for discrimination based on the

alleged denial of services. *See Goonewardena*, 2013 WL 1211496, at *6–7.[10]

---

[10] Plaintiff references Judge Bloom's January 10, 2012 Order granting Plaintiff's motion to amend his Complaint, (Docket Entry No. 88), as an "incomplete ruling" on his discrimination claim. Plaintiff misunderstands the significance of Judge Bloom's Order. Judge Bloom only held that Plaintiff adequately put Defendants on notice of the timing of his ADA claims such that Plaintiff was allowed to include the ADA claim in his Amended Complaint, (*id.* at 7). This was *not* a ruling on the merits of Plaintiff's claim. The Court is not now, contrary to Plaintiff's assertion, "refus[ing] to accept Judge Bloom's previous ruling." (Pl. Mem. 7–8.) As stated in the

## B. Failure to Modify Security Policies

"Under both [the ADA and the Rehabilitation Act], a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services.'" *McElwee*, 700 F.3d at 640 (quoting *Powell*, 364 F.3d at 85).

Plaintiff re-argues that Defendants' search policy as applied to psychiatric patients is in violation of the ADA and the Rehabilitation Act. (Pl. Mem. 13.) The Court held that, even assuming that Plaintiff could adequately allege a search policy that is discriminatorily applied, Plaintiff could not establish that Defendants' failed to modify that policy to accommodate his disability because Plaintiff could have simply removed his own coat, as asked by Defendants, as opposed to having it removed by hospital security.[11] *Goonewardena*, 2013 WL 1211496, at *8. According to Plaintiff, in so ruling, the Court abused its discretion by relying on a hypothetical argument. (Pl. Mem. 14.) Plaintiff attempts to support his argument by inappropriately applying the Court's reasoning to an inapposite and offensive sexual assault hypothetical. (*See id.*) The Court reaffirms its previous holding which was not based on a hypothetical but on Defendant's

Court's March 25, 2013 Memorandum and Order, the Court adopted Judge Bloom's R&R, finding that Plaintiff's Amended Complaint failed to state a plausible claim.

[11] Previously, Plaintiff contended that Zucker Hillside "requires, as a matter of policy and practice, that all persons with certain psychiatric conditions and symptoms who seek treatment in its emergency department and walk-in clinic must remove all their clothing and be searched." *See Goonewardena*, 2013 WL 1211496, at *8. Plaintiff also stated "that one of the symptoms of his OCD is that he does not like to be touched, especially by strangers." *Id.* (citation and internal quotation marks omitted). Therefore, Plaintiff argues that Defendants violated the ADA and Rehabilitation Act by failing to modify their search policy to accommodate Plaintiff's OCD. The Court held that Plaintiff failed to state a claim because he was asked to remove his own court, thereby avoiding the necessity of forceful removal and unwanted contact. *See id.* ("Even if the Court assumes that Plaintiff could adequately allege a search policy that is discriminatorily applied, Plaintiff cannot establish that Defendants failed to modify that policy to accommodate his disability.").

actual accommodation of Plaintiff's disability. As Plaintiff alleged in his Amended Complaint, he was asked to remove his own coat — this was the actual accommodation — and if he had done so — this is the hypothetical — the alleged assault that followed may not have occurred.[12] Plaintiff rejected the accommodation and Defendants subsequently enforced their unmodified policy. *See Goonewardena*, 2013 WL 1211496, at *8. Because Defendants' did attempt to accommodate Plaintiff, he fails to state a plausible failure to accommodate claim under the ADA or the Rehabilitation Act. *See McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (stating that the fourth element of a *prima facie* failure to accommodate claim involves a showing that the defendant "refused to make . . . accommodations"); *see also McElwee*, 700 F.3d at 641 ("Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice."); *McInerney*, 2013 WL 5614263, at *8 ("Title III and the Rehabilitation Act do not require a defendant to provide a plaintiff with his ideal or preferred accommodation.").

### ii. Medical Malpractice

Plaintiff requests that the Court exercise supplemental jurisdiction over Plaintiff's state law medical malpractice claim. (Pl. Mem. 21.) Plaintiff believes that the Court's refusal to exercise supplemental jurisdiction is an abuse of discretion as Plaintiff has spent over $5,000 pursuing his claims. (*Id.* at 22.) Other than now revealing how much money Plaintiff has expended on this litigation, Plaintiff identifies no information previously provided to the Court that would warrant the Court's reconsideration of its refusal to exercise supplemental jurisdiction

---

[12] The Court reiterates that "[w]hile Plaintiff may have a claim for assault, he does not have a claim for disability discrimination." *Goonewardena*, 2013 WL 1211496, at *8.

over Plaintiff's state law claims.[13]

      For the reasons discussed above, Plaintiff's motion for reconsideration is denied.

### c. Motion to Vacate

#### i. Restoration of § 1983 claim

      Plaintiff moves pursuant to Rule 60(b)(1) and (6) to restore his § 1983 claim against Defendants. (Pl. Mem. 17.) Judge Bloom noted that Defendants are private actors and absent any allegations of "state action or involvement in [D]efendants' denial or provision of mental health care services," Plaintiff's claim should be dismissed. (R&R 13–14.) Plaintiff did not object, and the Court, finding no clear error, adopted Judge Bloom's recommendation and dismissed Plaintiff's § 1983 claim. *See Goonewardena*, 2013 WL 1211496, at *10. Plaintiff now argues that he trusted Judge Bloom's decision but has since come across "numerous cases" standing for the proposition that Zucker Hillside Hospital's decision to involuntarily commit Plaintiff satisfies state action such that the hospital is a proper § 1983 Defendant.[14] (Pl. Mem. 17.) Plaintiff urges the Court to vacate its decision based on Plaintiff's mistake or excusable neglect. (*Id.*) The Court declines to do so.

---

[13] Plaintiff has commenced an action in state court to pursue all state law claims except for medical malpractice. (Pl. Reply Mem. 5.) Plaintiff offers no explanation as to why he chose to omit his medical malpractice claim from that currently pending state court action.

[14] The Second Circuit in an unpublished opinion held that the conduct of a hospital and doctor in involuntarily committing a plaintiff for emergency psychiatric care did "not fall within any of the tests for determining when private conduct can be attributed to the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009); *see also Smolian v. Port Auth. of New York & New Jersey*, 951 N.Y.S.2d 552, 553 (App. Div. 2012) ("Civil commitment by a private entity such as the Hospital, however, does not constitute state action." (citations omitted)). Subsequent to *Hogan*, one court in this Circuit denied a motion to dismiss based on an involuntary psychiatric hold because the plaintiff alleged that the hospital and doctors acted "in concert" with the County of Ulster County. *See Kelly v. Ulster Cnty., NY*, No. 12-CV-1344, 2013 WL 3863929, at *4 (N.D.N.Y. July 24, 2013). Plaintiff made no similar allegations in his Amended Complaint.

To obtain relief under Rule 60(b)(1), Plaintiff must show mistake or excusable neglect. Plaintiff only argues that he "trusted" Judge Bloom, an argument undercut by Plaintiff's robust objections to much of Judge Bloom's R&R. Plaintiff filed a fifty-two page memorandum in support of his objections to Judge Bloom's R&R. (Docket Entry No. 153.) Attached to Plaintiff's memorandum were ten exhibits totaling over an additional fifty pages. (*Id.*) It pushes the limits of credulity to accept Plaintiff's argument that he "trusted" Judge Bloom's recommendation with respect to his § 1983 claim but aggressively objected to Judge Bloom's holdings as to his ADA and Rehabilitation Act claims. Rule 60(b) relief is an "extraordinary" form of relief, *Nemaizer*, 793 F.2d at 61, and cannot be based on Plaintiff's "ignorance of the law," *see Burgos v. Pergament*, No. 11-CV-5257, 2012 WL 3929953, at *8 (E.D.N.Y. Sept. 10, 2012) (denying a *pro se* plaintiff's Rule 60(b) motion based on her "own mistakes or ignorance of the law" as well as her counsel's mistakes, for the period of time she was represented by counsel); *see also Brown v. Nelson*, No. 05-CV-4498, 2008 WL 4104040, at *3 (S.D.N.Y. Aug. 29, 2008) ("inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect" (citation and internal quotation marks omitted)). Plaintiff has not satisfied the onerous burden required for Rule 60(b)(1) relief. *See Brown v. Ionescu*, No. 02-CV-1218, 2009 WL 2433664, at *2 (S.D.N.Y. Aug. 5, 2009) ("A party's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), *aff'd*, 380 F. App'x 71 (2d Cir. 2010). The Court does not find that Plaintiff has shown adequate mistake or excusable neglect to warrant Rule 60(b)(1) relief.

Plaintiff also argues that the Court should vacate its decision to dismiss his § 1983 claim pursuant to Rule 60(b)(6). However, Rule 60(b)(6) and Rule 60(b)(1) are mutually exclusive.

*Miller*, 676 F.3d 67. Because the Court finds that Rule 60(b)(1) applies, it would be inappropriate to grant relief under Rule 60(b)(6). *See Hernandez v. La Cazuela de Mari Rest., Inc.*, 538 F. Supp. 2d 528, 537 (E.D.N.Y. 2007) ("Relief under Rule 60(b)(6) is reserved for 'exceptional circumstances' or 'extreme hardship' and is only available if no other subsection of Rule 60(b) applies." (quoting *Nemaizer*, 793 F.2d at 63 and *United States v. Cirami*, 563 F.2d 26, 30 (2d Cir. 1977))). Furthermore, Plaintiff offers absolutely no evidence to show the "extraordinary circumstances" or "extreme hardship" necessary for this Court to grant relief under Rule 60(b)(6). *See DeCurtis*, 529 F. App'x at 86. Therefore, the Court denies Plaintiff's motion to vacate the Court's dismissal of Plaintiff's § 1983 claim.

### ii. Plaintiff's Remaining Claims

Plaintiff does not state the basis for which the Court should vacate its decision as to Plaintiff's other claims. Plaintiff only argues that "[t]o vacate a final judgment due to clear error [and] abuse of discretion, Rule 60(b) is the proper motion to make." (Pl. Reply Mem. 3.) Plaintiff's memorandum in support of the current motion does not touch upon any of the Rule 60(b) bases for vacating judgment. *See* Fed. R. Civ. P. 60(b). The Court has properly considered Plaintiff's other claims under the standard for reconsideration and finds Plaintiff's arguments to be without merit.

### d. Motion for Sanctions

### i. Plaintiff's Motion for Sanctions

Plaintiff urges the Court to discipline Robert Frank Elliot and Robert G. Vizza, attorneys for Defendants. (Pl. Mem. 19.) Plaintiff alleges that Elliot made two false statements and a material misrepresentation to the Court and Vizza "continued where Mr. Elliot left off requiring Plaintiff pain and suffering in responding to Mr. Vizza's false statements." (*Id.* at 19–20.)

Specifically, Plaintiff states that he requested that Judge Bloom warn Elliot not to file false statements but Judge Bloom failed to do so. (*Id.* at 19.) In actuality, Judge Bloom denied Plaintiff's request for sanctions. (Docket Entry No. 39.) Defense counsel calls Plaintiff's allegations "unfounded and frivolous." (Defs. Opp'n Mem. 11.) For the reasons discussed below, Plaintiff's motion for sanctions is denied.

The Court understands Plaintiff to be moving for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 517–18 (S.D.N.Y. 2012) ("Rule 11(c) of the Federal Rules of Civil Procedure . . allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court." (quoting *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008))). There is no question that Plaintiff is well aware of Rule 11 and its procedural requirements as Plaintiff previously cited Rule 11 and noted his ability to file such a motion. (Docket Entry No. 31 ("Plaintiff can make a motion pursuant to Fed. R. Civ. P. 11(b) to Judge Garaufis for requesting sanctions to be imposed on Mr. Robert Elliot . . . .").) Rule 11 requires a motion for sanctions to be "made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2); *see also Rafter v. Fleet Boston Fin. Corp.*, 523 F. App'x 79, 81–82 (2d Cir. 2013) ("Rule 11[] require[s] that the motion be 'made separately from any other motion.'" (quoting Fed. R. Civ. P. 11(c)(2))). Plaintiff's motion was made as part of his motion for vacatur. The Court therefore declines to impose sanctions for failure to comply with the procedural requirements of Rule 11.[15]

---

[15] Plaintiff also asserts that he "kindly requested Your Honor to discipline Mr. Vizza" previously but received no answer from the Court. (Pl. Mem. 20.) Plaintiff is correct. However, Plaintiff's previous request for sanctions against Vizza was included in his reply memorandum in

### ii. Defendants' Motion for Sanctions

Defendants argue that Plaintiff, in his objections to Magistrate Judge Bloom's R&R, revealed "for the first time" that he had recorded a conversation with aftercare manager Mary Ann Ricardo.[16] (Defs. Mem. 12.) Defendants argue that Plaintiff now stands in violation of a prior court order to turn over all recordings in his possession. (*Id.*) As discussed with respect to Plaintiff's request for sanctions, any motion pursuant to Rule 11 of the Federal Rules of Civil Procedure must be made separately from any other motion. Defendants move for sanctions in their opposition brief to Plaintiff's motion to vacate. Therefore the Court declines to impose sanctions for failure to comply with the procedural requirements of Rule 11.

### e. Voluntary Dismissal of Claims Against Gallant

Defendants argue that Plaintiff previously withdrew all claims against Gallant. (Defs. Opp'n Mem. 10.) According to Defendants, Plaintiff made this withdrawal in his letter to the Court requesting oral argument on his objections to Judge Bloom's R&R. (*See* Docket Entry No. 134 ("First, I withdraw all claims against Mr. Remy Gallant.").) In their opposition memorandum to Plaintiff's objections to the R&R, Defendants requested that the Court issue an order reflecting Plaintiff's voluntary dismissal of all claims against Gallant. (Docket Entry No. 154.) Defendants now repeat that request. (Defs. Opp'n Mem. 10.) Plaintiff argues that he is not withdrawing any claims against Gallant. (Pl. Reply Mem. 12.) Plaintiff further argues that it would be inappropriate for the Court to grant any such relief at this time. (*Id.*) The Court agrees with Plaintiff. In light of Plaintiff's present assertion that he does not withdraw any

---

further support of Plaintiff's objections to Judge Bloom's R&R. (Docket Entry No. 155.) That request, like the current one, fails to comply with the requirements of Rule 11 that any motion for sanctions be made separately.

[16] Defendants do not state the procedural basis for their motion.

claims as to Gallant and the limited purpose of the present motion, the Court declines to issue an order reflecting Plaintiff's alleged voluntary dismissal of any claims against Gallant.[17]

### III. Conclusion

For the reasons set forth above, the Court declines to vacate the judgment or to modify its March 25, 2013 Memorandum and Order. The Court also declines to impose sanctions on attorneys for Defendants or on Plaintiff, and declines to issue any order specifically concerning claims against Defendant Gallant.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:   March 26, 2014
          Brooklyn, New York

---

[17]  The Court notes that in a letter dated March 30, 2012, Plaintiff did state that he "withdr[e]w all claims against Mr. Remy Gallant."  (Docket Entry No. 134.)